· Awe, Respondent, vs. Domer, Appellant.

*February 14—March 11, 1924.*

*Trusts: Title to land secured by fraud.*

Where plaintiff, having an unrecorded written contract for the purchase from L. of 120 acres of land, orally arranged with defendant `and L. that L. should convey forty acres thereof to·plaintiff and the other eighty acres to defendant, but defendant secured a conveyance of both tracts to himself, it is *held* that, notwithstanding sec. 2302, Stats., prohibiting the creation, except by operation of law or by conveyance in writing, of an interest in or trust concerning land, and sec. 2077, declaring that no trust results where the conveyance is to one other than the person paying the consideration, a trust resulted under sec. 2079, and defendant was properly required to convey to plaintiff the forty acres.   p. 272.

Appeal from a judgment of the circuit court· for Clark county: E. W. Crosby, Circuit Judge.  *Affirmed.*

The appeal is from a judgment adjudging the plaintiff to be the equitable owner of the southeast quarter of the southwest quarter of section 30, township 28 north, of range 1 west, Clark county, Wisconsin, and for costs and other relief.

This is an action in equity to compel the defendant to convey to the plaintiff forty acres out of a tract of 120 acres of land, and to assume the mortgage and other obligations on such tract of land.   The plaintiff had judgment in the lower court, and the defendant appeals and assigns as errors: that the court should have held that the alleged parol agreement was void under the provisions of secs. 2302 and 2077, Stats.; that the court erred in finding that any definite or enforceable agreement was ever made between the parties, and the court erred in·finding that defendant was guilty of fraud in obtaining the deed òf the land.

For the appellant there were briefs by *F. D. Calway*, attorney, and *James O'Neill*, of counsel, both of Neillsville, and oral argument by *Mr. Calway*.

*Herman·Leicht* of Medford, for the respondent.

CROWNHART, J.    This action was based on fraud of the appellant in securing title to 120 acres of land, whereas the respondent claims he should have had title to only eighty acres of land and the respondent should have had title to forty acres.    The facts as found by the court, and which are fully supported by the evidence, are substantially as follows:  On the 1st day of September, 1917, one Max Loeb was the owner of the south half of the southeast quarter and the southeast quarter of the southwest quarter of section 30, township 28 north, of range 1 west, Clark county, Wisconsin.    On that day Loeb entered into a contract in writing with one Albert Hotler, who agreed to purchase the land for $5,000—$200 cash, $600 on or before January 1, 1918, and $4,200 on or before five years after date, interest on payments at six per cent., payable annually.    Hotler paid the $200 cash and the $600 due January 1st.    In 1919 Hotler assigned his land contract to the respondent, *Herman Awe*.    Shortly after *Awe* had secured this assignment, the · appellant, *Domer,* having knowledge of the fact, negotiated with *Awe* to secure his interest in the south half of the southeast quarter, with the result that *Awe, Domer,* and an agent of Loeb met in Medford, where it was mutually agreed between them that *Awe,* in consideration of his payment to Hotler and obligations assumed to the extent of $800, should have a deed to the southeast quarter of the southwest quarter, and that *Domer,* in consideration of the payments to be made to Loeb and the mortgage on the premises of $2,000, which had been assumed by Hotler, should have the title to the eighty acres aforesaid.

The contract from Loeb to Hotler and the assignment from Hotler to *Awe* were not recorded.    After the agreement between *Domer, Awe,* and the agent of Loeb, Loeb sent a deed in blank to the Colby State Bank of the 120 acres.    *Awe* left his contract with Loeb's agent to be surrendered to Loeb upon delivery of the deeds to *Awe* and *Domer*.    *Domer* went to the bank, examined abstracts of the property, and found that the contract between Hotler

and Loeb and the assignment from Hotler to *Awe* had not been recorded. He thereupon requested that his name be filled in as the vendee in the deed, which was done, and he took title to the 120 acres. Before this was done, Andrews, the cashier of the bank, acting as the agent of Loeb, told *Domer* that *Awe* had been to the bank and advised Andrews that he had the contract between Loeb and Hotler assigned to him, and that in his agreement with *Domer*, *Domer* was to have eighty acres, and he, *Awe*, was to have forty acres. *Domer* testified that he was surprised to find the 120 acres in the deed, but nevertheless, with intent to defraud the respondent *Awe*, he took title to the whole 120 acres and thereafter refused to convey the forty acres to *Awe*. *Domer* went into possession of the whole 120 acres and took valuable timber from the forty acres, to which *Awe* was entitled.

The mortgage on the place was in process of foreclosure at the time the judgment in this case was entered in the circuit court.

It is plain from the evidence in this action that *Domer* secured a conveyance to him of the 120 acres for the purpose of defrauding *Awe* out of forty acres, to which *Awe* was entitled under his contract with *Domer;* in fact it may be said that *Domer* confesses to his fraud. *Domer* testified:

"I borrowed the money at the Colby State Bank and paid up Loeb & Hammel the balance that was due. The first time I went up to see Mr. Andrews [cashier of the bank] there was no abstract there. I didn't pay up that day or get a deed. I came up about ten days afterwards and there was an abstract. The abstract didn't show the contract. When the abstract was there Mr. Andrews told me *Mr. Awe* had been in the Colby Bank and told him he was to get title to that forty, and if I took title to all of it I might have trouble about it. It was my intention until the deed was given to me that *Awe* should have the forty. At the time when I got the deed for the whole 120 acres it was still my intention and purpose to give him the forty acres. But when I finally got the deed to the 120 acres of land, the eighty which belonged

to me and the forty to *Awe,* I thought I would keep the 120 acres because Hotler's contract was not on record. I was surprised that they should deed it all to me. I did not know that the whole 120 acres was to be deeded to me, I did not expect it all; they must have looked to me for the whole of it. I do not know and cannot think of any reason why it was all deeded to me. I paid $4,800 for the eighty and paid nothing for the forty. *Awe* was to get the forty next to me. I cut the timber off that land since this lawsuit was started two years ago."

So it appears without substantial dispute that this appeal is without merit on the facts. The only question that is worthy of consideration here is whether or not the contract between *Awe* and *Domer* was void under the statutes of the state. A bare statement of the facts is sufficient to show that the respondent's claim is not barred by either sec. 2302, Stats., reading as follows:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto shall be created, granted, assigned, surrendered or declared unless by act or operation of law or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same or by his lawful agent thereunto authorized by writing,"—

or by sec. 2077, which is as follows:

"When a grant for a valuable consideration shall be made to one person and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment is made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section."

Sec. 2077 is followed by sec. 2079, to wit:

"Sec. 2077 shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance in his own name, without the knowledge or consent of the person paying the consideration, or when such alienee, in violation of some trust, shall have purchased

the lands so conveyed with moneys belonging to another person."

The agreement between *Awe* and *Domer* did not contemplate that *Awe* was to convey the land to *Domer,* or that *Domer* was to secure title to the land and convey forty acres to *Awe.* It was simply to the effect that, under *Awe's* assignment of the Hotler contract, *Awe* was to procure from Loeb a deed of the forty and *Domer* was to receive from Loeb a deed of the eighty, but *Domer,* in fraud of *Awe,* secured the deed from Loeb to the whole 120 acres. It thereby appears that a trust resulted in law, whereby *Domer* held the bare legal title to the forty acres in trust for *Awe,* and the trial court correctly adjudged that he should make conveyance of the forty acres to *Awe* and save *Awe* harmless on account of the mortgage existing against the premises. The judgment should be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.